THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL CASE NO. 5:16-cv-00094-MR

| | | |
|---|---|---|
| **BEATRICE MAYFIELD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OF** |
| vs. | ) | **DECISION AND ORDER** |
| | ) | |
| **NANCY A. BERRYHILL[1], Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 11].

**I. PROCEDURAL HISTORY**

The Plaintiff Beatrice Mayfield filed a protective application for a period of disability and disability insurance benefits on August 23, 2012, alleging an onset date of March 27, 2012. [Transcript ("T.") 10, 113]. The Plaintiff's claim was denied initially and on reconsideration. [T. 10, 76, 81]. Upon the Plaintiff's request, a hearing was held on August 26, 2014, before

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the Defendant herein. See 42 U.S.C. § 405(g).

Administrative Law Judge Theresa R. Jenkins ("ALJ Jenkins"). [T. 21-43]. The Plaintiff and her husband testified at the hearing. On December 23, 2014, ALJ Jenkins issued a decision denying the Plaintiff benefits. [T. 7-17]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be

2

established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the

impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience.  Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.  In this case, the ALJ's determination was made at the fourth step.

## IV.  THE ALJ'S DECISION

In denying the Plaintiff's claim, the ALJ found that the Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2015, and that she has not engaged in substantial gainful activity since the alleged onset date of March 27, 2012.  [T. 12].  The ALJ then found that the medical evidence established that the Plaintiff has the following severe impairments: hypertension and hypertensive heart disease. [Id.].  The ALJ determined that neither of the Plaintiff's impairments, either

4

singly or in combination, met or equaled a listing. [T. 12-13]. The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding that the Plaintiff had the RFC to perform medium work except that she should avoid ladders, ropes, scaffolds, unprotected heights, and machinery with dangerous parts. [T. 13-16]. Based on this RFC, the ALJ then determined that the Plaintiff could still perform her past relevant work as a retail sales associate and computer operator. [T. 16]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from the alleged onset date through the date of her decision. [T. 17].

## V. FACTUAL BACKGROUND

On March 27, 2012, the Plaintiff presented to the emergency room due to a rash from poison-ivy exposure, was treated with an injectable steroid, and was discharged home the same day in stable condition. [T. 14, 222–25]. The Plaintiff returned to the emergency room the next day, reporting that she had a longstanding history of hypertension but did not take medication for it; that she had symptoms of "near syncope and chest pain" when she was discharged the previous day; that the medications with which she was treated made her dizzy; and that she became weak, with nausea and dizziness that led to constant, sharp, severe chest pain. [T. 14, 206]. An electrocardiogram ("EKG") showed no signs of acute ischemia, and she had

5

negative cardiac enzymes, but she was admitted for further evaluation and treatment [T. 14, 203].

Upon discharge the following day, the treating cardiologist, Dr. Allan, noted that the Plaintiff's EKG showed low sinus tachycardia with minimal ST depression and abnormal R-wave progression and that all other routine labs were unremarkable. [T. 14, 204]. In particular, an echocardiogram showed left-ventricular hypertrophy and normal left-ventricular systolic function, and there was no cardiac enlargement and no significant valvular heart disease [Id.]. Dr. Allan assessed acute dyspnea with associated chest pressure after the Vistaril and Decadron injection due to contact dermatitis; poorly controlled hypertension without medication and left-ventricular hypertrophy; and a cardiac murmur on exam. [Id.].

In April 2012, the Plaintiff presented to her primary care physician, Dr. Chi Kwong Lai, for a blood-pressure check and routine examination. At that time, she complained of shortness of breath on exertion but not chest pain or discomfort. [Tr. 15, 230]. In July 2012, the Plaintiff was examined by Dr. Richard Scherczinger. An EKG demonstrated normal sinus rhythm, a normal heart rate, and a normal axis without significant ST-T wave abnormality. [T. 15, 237]. Her physical examination was unremarkable except that her blood pressure was elevated at 170/92. [Id.]. Dr.

Scherczinger noted that he and Plaintiff discussed her chest discomfort in detail; he noted that the Plaintiff tended to have exacerbation with a cough, suggesting a musculoskeletal etiology, and that she had postprandial nausea, suggesting a possible gastrointestinal etiology. [T. 15, 238]. He recommended that the Plaintiff restart her previously prescribed blood-pressure medication. [T. 238].

In August 2012, the Plaintiff underwent a cardiology consultation at Iredell Memorial Hospital. A computed tomographic angiography of the thoracic aorta was normal, and a chest x-ray showed pulmonary hyperinflation with no acute pulmonary abnormality. [T. 15, 240]. An echocardiogram during treadmill testing was interpreted as indicating probable ischemia along the left-anterior-descending (LAD) distribution. [T. 15, 244]. The Plaintiff underwent a heart catheterization that showed mild disease of the LAD, no occlusive disease in the rest of the coronary arteries, normal left-ventricle function by ejection fraction and left-ventricular-end diastolic pressure, and no gradient across the aortic valve. [T. 15, 245-46]. The Plaintiff's physical examination was unremarkable, except for a 2/6 systolic-ejection murmur at the left upper-sternal border. [T. 15, 242]. Dr. Jerome Williams, Jr. opined that the Plaintiff's chest pain was not due to a coronary event. [Tr. 15, 249].

In October 2012, the Plaintiff was examined by Dr. Aregai Girmay, a consultative physician. [T. 15, 252-55]. The physical examination was unremarkable, except that the Plaintiff's blood pressure was elevated at 190/100. [T. 15, 254–55]. Dr. Girmay advised the Plaintiff to seek medical attention, and she stated that she would take her blood pressure medicine. [T. 254, 255]. Dr. Girmay assessed Plaintiff as having moderate physical limitation, stating that the Plaintiff could walk 100 feet without difficulty. [T. 16, 255]. State agency consultant Dr. Evelyn Jimenez-Medina opined in October 2012 that the Plaintiff had some postural and environmental limitations. [T. 59-61]. However, another consultant, Dr. Margaret Parrish, opined in January 2013 that the Plaintiff had no such additional limitations. [T. 72].

The Plaintiff completed a function report in September 2012. The Plaintiff indicated in that report that she has different levels of pain daily. She reported throbbing pains in her chest that radiate up each side of her neck. She reported that she plans her day, cooks, washes dishes, and then rests. She stated that she can care for her own needs slowly and that she does not take care of anyone else. She stated that she did not spend time with others but has no difficulty getting along with family, friends, neighbors, or others. She reported making notes to remind herself to take her medication. She

8

reported that her husband does the grocery shopping but that she is able to pay bills, count change, manage a savings account, and use a checkbook and money orders. The Plaintiff reported that her impairments affected her ability to lift, squat, bend, reach, walk, kneel, and climb stairs. She reported that she does not lift anything over five pounds. She stated that her medication regimen consists of Tribenzor, Toprol, and baby aspirin, but that the Tribenzor causes nausea. [T. 154-61]. The Plaintiff's husband also submitted a function report on her behalf, reporting similar limitations. [T. 138-45]. In another disability report, the Plaintiff indicated that she experiences numbness and cramps in her left arm and leg that began in November 2012. [T. 171].

The Plaintiff testified at the ALJ hearing that she can no longer work because she has a burning sensation and pain on her left side from her neck to her shoulder. [T. 32-33]. She testified that she was exposed to poison ivy and received steroid shots that caused her to have shortness of breath and rendered her semi-conscious. [T. 33-34]. She rated her heart pain as a four on a scale from one to ten all of the time. [T. 34]. She also claimed to have a burning sensation in her chest most of the time. [T. 33].

## VI. DISCUSSION

The Plaintiff, who is proceeding in this matter *pro se*, has filed a hand-written, two-page document entitled "Summary Judgment," which the Court construes as a motion for summary judgment. In her motion, the Plaintiff does not specifically reference the ALJ's decision or identify any errors that the ALJ made in evaluating the record. Rather, she appears to make two primary arguments, which the Court will address in turn.

In her first argument, the Plaintiff contends that her "case should not be 'dismissed' because I am still sick." [Doc. 10 at 2; see also Doc. 13 at 1 ("I was sick when I applied for disability and I still am.")]. The question presented to the Court, however, is not whether the Plaintiff is "sick." Rather, the issue before the Court is whether "substantial evidence" was presented at the hearing before the ALJ to support the ALJ's determination that the Plaintiff is not "disabled" within the meaning of the Social Security Act. The resolution of this issue requires a determination of not whether the Plaintiff is sick but rather whether the Plaintiff's medical conditions constitute severe impairments which preclude her from engaging in substantial gainful activity. See 20 C.F.R. § 404.1505(a).

Here, at step two of the sequential evaluation, the ALJ found that the Plaintiff's hypertension and hypertensive heart disease were both severe

impairments that have had more than a minimal effect on her ability to do basic work-related activities. [T. 12]. As such, the ALJ agreed with the Plaintiff that she is sick. After reviewing the record, however, the ALJ concluded that, notwithstanding the Plaintiff's condition, she was still capable of performing medium work, with some postural and environmental limitations, and therefore could perform her past relevant work. [T. 15-17]. There is substantial evidence in the record to support this decision. While Dr. Girmay opined that the Plaintiff had "moderate" physical limitations, the ALJ properly discounted Dr. Girmay's opinion. To the extent that Dr. Girmay's opinion is suggestive of limitations in excess of the ALJ's RFC finding, such opinion is inconsistent with his own examination findings, which were consistently normal with the exception for the Plaintiff's high blood pressure, a condition which the ALJ properly noted was "secondary to the [Plaintiff's] non-compliance with her blood pressure medication." [T. 16].

The ALJ's decision is also supported by the opinions of the state agency medical consultants, who concluded that the Plaintiff had the RFC to perform medium work, albeit with some postural and environmental limitations. [See T. 16, 59-61, 72]. The ALJ properly accounted for these limitations by including in the RFC that the Plaintiff had to avoid ladders, ropes, scaffolds, unprotected heights, and machinery with dangerous parts.

[T. 13]. In sum, the medical evidence of record presents substantial evidence to support the ALJ's determination that the Plaintiff was able to perform her past relevant work despite her limitations.

In her second argument, the Plaintiff argues that "[t]he file has been altered, tampered with and made to benefit" the Defendant and that "[t]here are many missing pages and altered conversations. Such as . . . the Charlotte 'Based Hearing,' pages missing . . . such as the 'Confirmation Letter,' after the Application Interview." [Doc. 10 at 2 (ellipses in original)]. The Plaintiff fails, however, to supplement the record or even to explain how these allegedly missing documents are material to the determination of disability. Without any further explanation as to how these documents could have impacted the ALJ's decision, the Court has no basis on which to overturn the ALJ's determination and thus must conclude that this assignment of error is without merit.[2]

The Plaintiff also contends that her disability file contains false statements regarding her mental condition. [Doc. 13 at 1]. This argument appears to be in relation to certain statements added by a Social Security

---

[2] In her motion, the Plaintiff also suggests that her medical condition may be the result of medical malpractice and that the deficiencies in the record may be the product of misconduct on the part of the Defendant. Such issues are beyond the scope of this Court's review in this case, particularly since there is no evidence in the record to support such conjecture.

Administration employee to the Plaintiff's Disability Report, suggesting the existence of a possible mental condition based on the employee's observations that the Plaintiff was erratic and incoherent in her responses to questions; that her responses were disjointed; and that the information provided was not relevant to the questions asked. [See T. 128]. The inclusion of these statements in the record, did not adversely affect the Plaintiff. In fact, the ALJ expressly gave no weight to these opinions, noting that the employee was not qualified to make any such diagnosis regarding the Plaintiff's mental condition. [T. 16]. Moreover, the ALJ noted that the employee's opinions were inconsistent with the record as a whole, which indicated that the Plaintiff has never claimed to have a mental illness nor has she ever sought psychological treatment or required inpatient psychological hospitalization. [Id.]. Accordingly, this assignment of error is also without merit.

For all of the reasons set forth above, the Court concludes that there is substantial evidence in the record to support the ALJ's determination that the Plaintiff is not disabled. Accordingly, the decision of the Commissioner is affirmed.

**O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 11] is **GRANTED**; the Plaintiff's Motion for Summary Judgment [Doc. 10] is **DENIED**; and the decision of the Commissioner below is hereby **AFFIRMED**.

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 13, 2017

Martin Reidinger
United States District Judge